ORIGINAL

# In the United States Court of Federal Claims

No. 09-317L

(Filed: January 13, 2014)

**FILED**

JAN **1 3** 2014

U.S. COURT OF
FEDERAL CLAIMS

JOHN H. McKOWN IV,

        Plaintiff,

v.

THE UNITED STATES,

        Defendant,

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Takings; Motion to dismiss for lack of subject matter jurisdiction – RCFC 12(b)(1); 28 U.S.C. § 1500; *Klamath Irrigation Dist.* tests applied; Previously-filed case in district court, that was pending at the time the case in question was filed, involved the same claims; Motion granted – case dismissed for lack of jurisdiction.

## OPINION and ORDER

*John H. McKown,* plaintiff, acting *pro se.*

*William James Shapiro*, Environment & Natural Resources Division, United States Department of Justice, with whom was Acting Assistant Attorney General *Robert G. Dreher*, for defendant.

**ALLEGRA, Judge**:

Defendant has moved to dismiss plaintiff's complaint under RCFC 12(b)(1), asserting that the prior filing of a district court action deprived this court of jurisdiction under 28 U.S.C. § 1500. For the reasons that follow, the court **GRANTS** this motion.

On October 28, 1993, John H. McKown IV (plaintiff) located the three mining claims at issue in this case, White Cap Nos. 1-3, within the Sequoia National Forest.[1] On October 31,

---

[1] These facts are primarily drawn from plaintiff's complaint and, for the purpose of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

1994, Congress enacted the California Desert Protection Act of 1994, Pub. L. No. 103-433, 108 Stat. 4471 (codified in part at 16 U.S.C. § 410aaa-410aaa-83) (hereinafter "CDPA"), establishing, *inter alia*, the Kiavah Wilderness as part of the National Wilderness Preservation System.

On May 7, 2009, plaintiff filed a complaint in the U.S. District Court for the Eastern District of California alleging that in the course of implementing the CDPA, various parties, including the Secretary of the Interior, Secretary of Agriculture, and employees of the Forest Service, prevented him from accessing and exploiting the three mineral claims, and asserting four different causes of action: (i) a request for declaratory judgment that the government's actions prevent plaintiff from accessing his claims and an injunction preventing defendant from restricting plaintiff's access to the claims under authority of the CDPA; (ii) a quiet title action; (iii) a claim pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) that defendant's actions deprived plaintiff of his constitutional rights; and (iv) an assertion that defendant's actions were an improper restraint on interstate commerce. While not enumerated as a separate takings claim, in the context of the four aforementioned claims, plaintiff avers repeatedly that defendant's actions "deprived Plaintiff of all economically viable use of his land, which required the payment of just compensation under the Fifth Amendment." Plaintiff also alleges, without specifically invoking the Fifth Amendment, that several other actions by defendant "deprived plaintiff of all economically viable use of his land." Plaintiff sought injunctive and monetary relief.

On May 18, 2009, 11 days after filing his complaint in the district court, plaintiff filed a complaint in this court alleging an uncompensated takings under the Fifth Amendment. Plaintiff specifically alleged that defendant's implementation of the CDPA improperly restricted his access to and exploitation of his mining claims, thereby depriving him of the value of his property without compensation. Plaintiff attached the same three exhibits to his complaint that were attached to his district court complaint.

On June 20, 2011, defendant moved to dismiss plaintiff's action based on 28 U.S.C. § 1500. On December 5, 2011, the court stayed this action pending the court's decision on a similar motion in *Petro-Hunt v. United States*, 00-512 L (Fed. Cl.). On May 3, 2012, the court advised the parties that it had issued its decision in *Petro-Hunt*, and directed defendant to file an updated motion to dismiss on or before June 15, 2012.

On June 15, 2012, pursuant to Rule 12(b)(1) and Rule 12(h)(3) of the RCFC, defendant filed a renewed motion to dismiss plaintiff's complaint, again arguing that 28 U.S.C. § 1500 divests this court of jurisdiction over McKown's action. On January 2, 2013, this case was stayed pending a decision on a similar motion in *Klamath Irrigation District, et al. v. United States*, No. 01-591 (Fed. Cl.). On November 22, 2013, this court issued its decision in that case, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013). On January 6, 2014, the parties, per court order, filed supplemental briefs addressing the *Klamath* decision.

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 554–55. In particular, the plaintiff must establish that the court has subject matter jurisdiction over its claims. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Plaintiff is proceeding *pro se*, and therefore, the court reviews his pleadings and other papers liberally and holds them to a less stringent standard than those that attorneys prepare. *See Greenhill v. United States*, 81 Fed. Cl. 786, 790 (2008) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Nevertheless, a *pro se* litigant's pleadings must still comply with the same procedural rules as other litigants. *See Greenhill*, 81 Fed. Cl. at 790 (citing *Henke v. United States*, 60 F. 3d 795, 799 (Fed. Cir. 1995)).

Plaintiff asserts subject-matter jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491. That provision grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). It is well-established that takings actions come within this grant of jurisdiction. *See Keene Corp. v. United States*, 508 U.S. 200, 205 (1993); *Bywaters v. United States*, 670 F.3d 1221, 1224 (Fed. Cir. 2012). Defendant, however, claims that jurisdiction is lacking here because of 28 U.S.C. § 1500.

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. The plain words of this statute speak in terms of subject matter jurisdiction and "bar jurisdiction over the claim of a plaintiff who, upon filing [with the Court of Federal Claims], has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp.*, 508 U.S. at 209; *see also Nez Perce Tribe v. United States*, 83 Fed. Cl. 186, 189 (2008). To determine whether this statute applies here, the court must answer two fundamental questions: (i) whether the district court action was "pending" at the time jurisdiction under section 1500 is measured; and (ii) if so, whether the claims presented to the district court were the same as those in the instant case. *See Klamath Irr. Dist.*, 2013 WL 6139925, at * 1; *see also Kaw Nation of Oklahoma v. United States*, 103 Fed. Cl. 613, 617 (2012); *Griffin v. United States*, 85 Fed. Cl. 179, 184 (2008), *aff'd*, 590 F.3d 1291 (Fed. Cir. 2009).

3

It is undisputed that the district court action was filed eleven days before the complaint was filed in this court, and that that case was "pending" at the time the action here was filed. *See Petro-Hunt, L.L.C. v. United States*, 105 Fed. Cl. 37, 43 (Fed. Cl. 2012). Therefore, the first prong of the section 1500 analysis is satisfied.

For section 1500 to apply here, the suit in question and that in the district court must also be "for or in respect to" the same claims. In *Tohono*, the Supreme Court held this requirement is met when two claims are "based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1727 (2011); *see also Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013); *Trusted Integration*, 659 F.3d at 1164. This court has emphasized that "determining whether two claims are 'based on substantially the same operative facts' requires more than a side-by-side comparison of the two complaints to see how much verbiage is in common." *Petro-Hunt*, 105 Fed. Cl. at 43; *see also Klamath Irr. Dist.*, 2013 WL 6139925 at * 10. Before performing such comparisons, rather, the court must "first isolate the facts in the complaint that are 'operative,' *i.e.*, those that must be proven in order to recover on a given claim." *Petro-Hunt*, 105 Fed. Cl. at 43; *see also Klamath Irr. Dist.*, 2013 WL 6139925 at * 13.

So which facts in a complaint are "operative"? In *Klamath Irrigation District*, this court observed that cases involving section 1500 generally fall into three categories; (i) "repackaged suits," in which the same suit is essentially filed in both courts; (ii) "necessarily sequential" suits, in which the claimant must establish a factual or legal predicate in some other court as a precursor to prevailing in this court; and (iii) "optionally sequential" suits, in which a claimant chooses first to challenge the validity of an agency action and pursues a monetary remedy if it is unable to overturn the agency action. *Klamath Irr. Dist.*, 2013 WL 6139925, at * 10-12. In analyzing these categories of cases, the court observed that the "same operative facts" standard established by the Supreme Court in *Tohono* has long been used by courts in determining whether cases present the same claims for purposes of Federal Rules of Civil Procedure 13, 15 and 20. *Id.* at * 14-17.

Reviewing the cases decided under those rules, this court held that "[i]n deciding whether two claims are the same for purposes of section 1500, . . . the court should ask and ultimately answer four questions:

(i) Are the issues of fact and law raised by the two claims largely the same?

(ii) If an adverse merits decision were rendered on the earlier claim, would the doctrine of *res judicata* bar a subsequent suit on the later-filed claim?

(iii) Will the plaintiff rely on substantially the same evidence to support each of the two claims?

(iv) Is there any other logical relationship between the two claims?

4

*Id.* at 18. Relying *inter alia* on Federal Circuit precedents involving the joinder rules cited above, the court held that "an affirmative answer to any one of these questions should lead to two claims being viewed as the same for purposes of section 1500." *Id.* (citing *Vivid Techs., Inc. v. Am. Science & Eng'g*, 200 F.3d 795, 801 (Fed. Cir. 1999).

Insofar as plaintiff's takings claim is concerned, each of the above questions is answered affirmatively. First, the issues of fact and law raised by the two takings claim are identical – with the only differences relating to form of the pleadings and the nature of the relief requested, a consideration that the Supreme Court in *Tohono* deemed irrelevant. *See Tohono*, 131 S. Ct. at 1730.[2] Second, applying the forms of *res judicata* applicable in this context,[3] there is no doubt that a merits decision rendered by the district court on the claims plaintiff brought there would have precluded litigation of the suit here. Third, a review of the relevant complaints (and the attachments thereto) makes equally plain that the evidence that plaintiff sought to rely upon in supporting his district court takings claim is exactly the same as the evidence he seeks to rely upon here. Plaintiff does not seriously dispute that the facts he alleges "cover the same time span, involve the same parties and discuss the same conduct." *Low v. United States*, 90 Fed. Cl. 447, 453 (2009). Finally, plaintiff's takings claims also violate the "logical relationship test," as "it is readily apparent that separate trials on [plaintiff's district court and CFC] claims would have involved a substantial duplication of time and effort by the parties and the courts involved." *Klamath Irr. Dist.*, 2013 WL 6139925, at *26. In short, the situation here is one involving "repackaged suits," in which plaintiff's district court takings claim (albeit one not separately enumerated) and the takings claim asserted here fully overlap.[4]

---

[2] That plaintiff did not have a specific takings count in his district court complaint does not lead to a different conclusion. In the operative portions of complaint, plaintiff repeatedly recited his entitlement to takings damages, claiming that the United States had "deprived Plaintiff of all economically viable use his land." And, in that complaint, plaintiff also sought monetary compensation. In the court's view, that is sufficient to treat plaintiff's complaint as having raised a takings claim.

[3] In *Trusted Integration*, the Federal Circuit emphasized that the *res judicata* principles relevant for this purpose are those "which were in force at the time the predecessor to § 1500 was enacted," and not the modern tests for claim preclusion. The court identified two versions of the test that could be applied – the "act or contract test" and "the evidence test." 659 F.3d at 1168-69 (citing *Tohono*, 131 S.Ct. at 1730); *see also Klamath Irr. Dist.*, 2013 WL 6139925, at * 21 (discussing these tests).

[4] *See also Central Pines Land Co. v. United States*, 697 F.3d 1360, 1365 (Fed. Cir. 2012) ("Because plaintiffs filed two nearly identical complaints that, at best, repackaged the same conduct into two different theories, and at worst, alleged the same takings claim, we find that there is a substantial overlap of operative facts that implicates the § 1500 bar."); *Winnebago Tribe of Nebraska v. United States*, 101 Fed. Cl. 229, 234 n.3 (2011) ("In other words, the Tribe has merely taken its allegations of the United States' conduct from its suit in federal district court and repackaged them in its Court of Federal Claims suit."). For further examples of "repackaged

In light of the above discussion, plaintiff's complaint in this court is based on the same operative facts as an earlier filed complaint in district court, and, therefore, this court lacks jurisdiction over plaintiff's claims.  Based on this conclusion, the Clerk is hereby ordered to **DISMISS** the complaint under RCFC 12(b)(1).

**IT IS SO ORDERED**.

Francis M. Allegra
Judge

---

suits," *see In re Skinner & Eddy Corp.*, 265 U.S. 86, 91-92 (1924) (seeking money damages against the United States in the Court of Claims and against a federal entity in state court); *Corona Coal Co. v. United States*, 263 U.S. 537, 539 (1924) (seeking money damages against the United States in the Court of Claims and against a federal agent in District Court); *British American Tobacco Co. v. United States*, 89 Ct. Cl. 438, 439-40 (1939) (*per curiam*), *cert. denied*, 310 U.S. 627 (1940) (seeking tort damages in the district court and contract damages in the Court of Claims); *see also* Gregory C. Sisk, "The Jurisdiction of the Court of Federal Claims and Forum Shopping in Money Claims Against the Federal Government," 88 Ind. L. J. 83, 119-28 (2013).